UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LA QUINTA FRANCHISING LLC, a Nevada Limited Liability Company,<br><br>Plaintiff,<br>v.<br><br>NISHA INVESTMENTS, LLC, a Louisiana Limited Liability Company, and RAJESH PATEL, an individual,<br><br>Defendants. | Civil Action No. 23-23180 (JXN) (AME)<br><br>OPINION |

**NEALS**, District Judge:

This matter comes before the Court on Plaintiff La Quinta Franchising, LLC's ("LQF" or "Plaintiff") motion for default judgment against Defendants Nisha Investments, LLC ("Nisha Investments") and Rajesh Patel ("Patel") (collectively "Defendants") pursuant to Federal Rule of Civil Procedure 55(b). (ECF No. 11). Jurisdiction is proper pursuant to 28 U.S.C. § 1332(a). Venue is proper pursuant to 28 U.S.C. § 1391. The Court has carefully considered Plaintiff's submissions and decides this matter without oral argument under Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, Plaintiff's motion for default judgment is **GRANTED**.

**I.   BACKGROUND AND PROCEDURAL HISTORY**[1]

On September 12, 2019, LQF entered into a Franchise Agreement ("Franchise Agreement") with Defendants to operate a 172 room La Quinta® "guest lodging facility" located at 794 East I-10 Service Road, Slidell, Louisiana 70461, designated as Site No. LQF 52902-15970-

---

[1] "Where a court enters a default judgment, 'the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 (3d Cir. 2005) (quoting *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)).

02 (the "Facility"). (Complaint ("Compl."), ¶ 8, ECF No. 1; Declaration of Kendra Mallet ("Mallet Decl."), ¶ 3, ECF No. 11-4 (citing Ex. A, ECF No. 11-5)).

That same day, LQF and Nisha Investments entered into a SynXis Subscription Agreement (the "SynXis Agreement"), which governed Nisha Investments' access to and use of certain computer programs, applications, features, and services, as well as any and all modifications, corrections, updates, and enhancements to the same. (Compl. ¶ 9).

Under the Franchise Agreement, Nisha Investments was required to operate the La Quinta guest lodging facility until May 30, 2038. (Compl. at ¶ 10; Mallet Decl., ¶ 5 (citing Ex. A §§ 5, 18.1)).

In operating the Facility, Nisha Investments was required to make periodic payments to LQF for royalties, system assessments, taxes, interest, SynXis Fees, and other fees (the "Recurring Fees"). (Compl. at ¶ 11; Mallet Decl., at ¶ 8). Additionally, Section 7.3 of the Franchise Agreement provides that interest is payable "on any past due amount payable to [LQF] under this [Franchise] Agreement at the rate of 1.5% per month or the maximum rate permitted by applicable law, whichever is less, accruing from the due date until the amount is paid." (Compl. ¶ 12; Ex. A).

Pursuant to section 11.2 of the Franchise Agreement, Nisha Investments agreed that LQF could terminate the Franchise Agreement if, among other reasons, Nisha Investments discontinued operating the Facility as a La Quinta® guest-lodging facility. (Compl. ¶ 15).

The Franchise Agreement provides that upon premature termination, Defendants must pay (1) all outstanding Recurring Fees, which are the fees paid to LQF to license its name, mark, and system; and (2) liquidated damages, payable "within [thirty] 30 days following the date of termination . . . ." The amount of liquidated damages would be "equal to the average monthly

accrued Recurring Fees during the immediately preceding 12 full calendar months multiplied by 36 (or the number of months remaining in the unexpired Term (the 'Ending Period') at the date of termination, whichever is less)."[2] (Exhibit A § 12.1).[3] Pursuant to section 17.4 of the Franchise Agreement, Nisha Investments agreed to "pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this [Franchise] Agreement or collect amounts owed under this [Franchise] Agreement." (Compl. ¶ 17).

Patel guaranteed Nisha Investments obligations under the Franchise Agreement to LQF. (Mallet Decl., ¶ 4, Ex. B, ECF No. 11-6). Under the terms of the Guaranty, Patel agreed, among other things, to "immediately make each payment and perform or cause Nisha Investments to perform, each unpaid or unperformed obligation of Nisha Investments under the Franchise Agreement." (Compl. ¶ 19; Ex. B, ECF No. 1-2; Mallet Decl., ¶ 4 (citing Ex. B)).

According to the Complaint, in October 2023, Patel, on behalf of Nisha Investments, sent an email to LQF "to terminate my affiliation" with the Facility "effective immediately." (Compl. ¶ 21 (citing Ex. C, ECF No. 1-3)). By letter dated November 7, 2023, LQF acknowledged Defendants' unilateral termination of the Franchise Agreement for the Facility and advised Defendants that it was required to pay LQF "Liquidated Damages of $1,079,083.18, as specified in Section 18.4 of the Agreement" and "any outstanding Recurring Fees . . . as of the Termination Date, [Defendants] owe [LQF] $29,423.42." (Compl. ¶ 22; Ex. D, ECF No. 1-4). To date, Defendants have failed to pay the outstanding amounts due and owing to LQF under the terms of the License Agreement and Guaranty.

---

[2] The Franchise Agreement includes a multiplier of thirty-six (36) of the average monthly Recurring Fees based on LQF's experience that, insofar as LQF can franchise another hotel within the geographic vicinity of a terminated facility at all, that process is likely to require at least if not longer than three years. (Mallet Decl. at ¶ 11, Exhibit A § 12.1).

[3] Section 12.1 further sets a "floor" for the amount of liquidated damages, providing that they "will not be less than the product of $2,500 multiplied by the number of authorized guest rooms at the Facility." (Exhibit A § 12.1, Schedule B).

On December 18, 2023, LQF filed a six count Complaint against Defendants, alleging *inter alia*, breach of contract and seeking damages against Patel for Nisha Investments' breach, pursuant to the Guaranty. (*See generally*, Compl.).

On May 9, 2024, given Defendants failure to timely file a responsive pleading, Plaintiff filed a request for default against Defendants pursuant to Federal Rule of Civil Procedure 55(a). On May 10, 2024, Default was entered against Defendants. (ECF No. 7).

On October 15, 2024, Plaintiff filed the instant motion for default judgment against Defendants. ("Pl.'s Br.") (ECF Nos. 11, 11-1). Defendants have failed to file any responsive pleading or otherwise appear in this action and have not requested any extension of time to respond. This matter is now ripe for consideration.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 55(b) "authorizes courts to enter a default judgment against a properly served defendant who fails to file a timely responsive pleading." *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535 (D.N.J. 2008). A party seeking default judgment is not entitled to that judgment as of right, rather "[t]he decision to enter a default judgment is 'left primarily to the discretion of the district court.'" *Maersk Line v. TJM Int'l Ltd. Liability Co.*, 427 F. Supp. 3d 528, 532 (D.N.J. 2019) (quoting *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984)).

Before granting default judgment, the Court must determine whether: (1) it has subject matter jurisdiction over the claims at issue and personal jurisdiction over the defendant; (2) the defendant was properly served; (3) the complaint states a sufficient cause of action; and (4) the plaintiff has proven damages. *Days Inns Worldwide, Inc. v. HH Pramukh, LLC*, No. 15-4318, 2016 WL 7231598, at *1 (D.N.J. Dec. 14, 2016) (citations omitted).

4

Additionally, a court must determine the appropriateness of default judgment by considering: (1) prejudice to the plaintiff if the default judgment is denied; (2) whether the defendant has a viable defense; and (3) whether defendant is culpable for its delay. *Trs. of Int'l Union of Painters v. Leo Consulting, LLC*, 718 F. Supp. 3d 436, 441 (D.N.J. 2024).

Because default judgments prevent the resolution of claims on their merits, the court "does not favor entry of defaults and default judgments." *United States v. Thompson*, No. 16-0857, 2017 WL 3634096, at *1 (D.N.J. July 20, 2017) (quoting *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984)).

## III.   DISCUSSION

### A. The Court Has Jurisdiction Over Defendants

#### i.    The Court has subject-matter jurisdiction over Defendants

As to subject-matter jurisdiction, the Court has diversity jurisdiction under 28 U.S.C. § 1332. (Compl. ¶ 4). To establish diversity jurisdiction pursuant to 28 U.S.C. § 1332(a), "the party asserting jurisdiction must show that there is complete diversity of citizenship among the parties and an amount in controversy exceeding $75,000*." Schneller ex rel. Schneller v. Crozer Chester Med. Ctr.*, 387 F. App'x 289, 292 (3d Cir. 2010). "A corporation is a citizen both of the state where it is incorporated and of the state where it has its principal place of business." *Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015). "[T]he citizenship of an LLC is determined by the citizenship of its members." *Id*. (citations omitted). "A natural person is deemed to be a citizen of the state where he is domiciled." *Id*.

Where an LLC is a party, the citizenship of the LLC "'must be traced through however many layers of partners or members there may be' to determine the citizenship of the LLC." *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010) (citing *Hart v. Terminex Int'l*, 336 F.3d 541, 543 (7th Cir. 2003)).

5

Here, LQF is a Nevada based limited liability company; LQF's sole member is Lodge Holdco II LLC, a limited liability company organized under the laws of Delaware, with its principal place of business in New Jersey, thus, LQF is a citizen of New Jersey. The sole member of Lodge Holdco II LLC is La Quinta Intermediate Holdings LLC, a limited liability company organized under the laws of Delaware, with its principal place of business in New Jersey. The sole member of La Quinta Intermediate Holdings LLC is La Quinta Holdings Inc., a corporation organized under the laws of Delaware, with its principal place of business in New Jersey. (Compl. ¶ 1). Tracing LQF's citizenship, La Quinta Holdings Inc., a corporation, is a citizen of Delaware and New Jersey. *Lincoln Benefit Life Co*, 800 F.3d at 104.

Nisha Investments is a Louisiana limited liability company with its principal place of business in Baton Rouge, Louisiana. Upon information and belief, Defendant Patel is the sole member of Nisha Investments and a citizen of the State of Louisiana, having an address at 11423 Lemonwood Drive, Denham Springs, Louisiana 70726. The amount in controversy exceeds $75,000. (Compl. at ¶ 4.) Thus, the Court has subject-matter jurisdiction over this action.

  ii.  **The Court has personal jurisdiction over Defendants**

As for personal jurisdiction, it is well-established that contractual forum selection clauses provide a valid basis for personal jurisdiction in New Jersey.[4] *See M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972) (holding that forum selection clauses are "*prima facie* valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances"); *see also In Re Diaz Contracting, Inc.*, 817 F.2d 1047 (3d Cir. 1987) (following *Bremen* and declaring the *Bremen* holding to be in accord with New Jersey law). Similarly, where a party executes a guaranty for a contract in which a forum selection clause exists, that party is

---

[4] In diversity cases, federal law governs the effect given to a forum selection clause. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877 (3d Cir. 1995).

6

also subject to the terms of the forum selection clause. *See Shelter Systems Groups Corp. v. Lanni Builders, Inc.*, 263 N.J. Super 373, 375 (App. Div. 1993).

In this case, Nisha Investments consented to jurisdiction in "New Jersey state courts situated in Morris County, New Jersey and the United States District Court for the District of New Jersey . . . ." pursuant to Section 17.6.3 of the Franchise Agreement. (Mallet Decl., ¶ 7 (citing Ex. A at 25, ECF No. 11-5)). Patel signed the Guaranty, which acknowledged that "Section 17[.6.3] of the [Franchise] Agreement, including Remedies, Venue and Dispute Resolution, and WAIVER OF JURY TRIAL, applies to this Guaranty." (Mallet Decl., ¶ 7 (citing Ex. B)).

### B. Defendants Were Properly Served

Federal Rule of Civil Procedure 4(e) provides four methods for effecting service in a district court: (1) personal service upon the individual; (2) leaving a copy at the individual's dwelling or place of abode with someone of a suitable age who resides there; (3) delivering the summons and complaint to the party's legal agent; or (4) serving the defendant in accordance with the state laws where the district court sits or where service is made. Fed. R. Civ. P. 4(e). Further, under Federal Rule of Civil Procedure 4(h)(1)(A), a limited liability company may be served "in the manner prescribed by Rule 4(e)(1) for serving an individual."

Service of the Summons and Complaint was effectuated on Nisha Investments, through Snehal Patel, its registered agent, in Baton Rouge, Louisiana on January 23, 2024. (ECF No. 4). Service of the Summons and Complaint was effectuated on Rajesh Patel by personal service in Denham Springs, Louisiana on January 11, 2024. (ECF No. 5). Since Defendants were served pursuant to Fed. R. Civ. P. 4(e)(1) and (e)(3), there is sufficient proof of service as to all Defendants.

### C. Plaintiff Adequately Alleges a Breach of Contract

"To state a claim for breach of contract, [Plaintiff] must allege (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007).

The Complaint adequately asserts all four elements. Defendants entered into valid contracts with LQF—the Franchise Agreement and Guaranty.[5] (Compl. ¶ 8; Mallet Decl. ¶ 5). Defendants breached when they unilaterally terminated the Franchise Agreement prior to the agreed upon duration date and failed to pay the liquidated damages and recurring fees provisions pursuant to the Franchise Agreement in the event of such premature termination. (Compl. ¶¶ 16, 21, 32, 40-41; Mallet Decl. ¶ 10). Under the Guaranty, Patel is obligated to pay liquidated damages and outstanding Recurring Fees but has failed to perform those obligations. (Compl. ¶¶ 19, 47-48; Mallet Decl. ¶ 16). LQF suffered damages as a result of Defendants' breach, in particular its failure to operate the Facility, pay outstanding Recurring Fees, and pay liquidated damages. (Compl. ¶¶ 32, 35, 37; Mallet Decl., ¶¶ 12, 14-16). LQF has performed its obligations under the Franchise Agreement. (Compl. ¶ 22). In light of the pleadings and the principle that factual allegations in the complaint are treated as conceded by the Defendants, DIW has established a sufficient cause of action against Defendants. *See DIRECTV*, 431 F.3d at 165.

### D. Default Judgment is An Appropriate Remedy

To determine whether granting default judgment is proper, the Court must make factual findings as to: "(1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Doug*

---

[5] *See also Travelodge Hotels, Inc. v. Huber Hotels, LLC*, No. 19-20571, 2022 WL 44634, at *6 (D.N.J. Jan. 5, 2022) (noting that a guaranty is a contract) (citation omitted).

*Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)).

Here, all factors weigh in favor of granting default judgment.

First, there is no evidence in the record for Defendants to claim a meritorious defense. "[A] defendant has established a meritorious defense when its 'allegations, if established at trial, would constitute a complete defense.'" *Mrs. Ressler's Food Prod. v. KZY Logistics LLC*, 675 Fed. App'x 136, 140 (3d. Cir. 2017) (quoting *$55,518.05 in U.S. Currency*, 728 F.2d at 195). LQF provided ample evidence that Defendants entered into, and then breached, the unambiguous terms of the Franchise Agreement and Guaranty. (Compl. ¶¶ 8, 14-16, 19, 21, 32, 35, 37, 40-41; Mallet Decl., ¶¶ 3-6, 12-16). Since Defendants failed to respond or answer the Complaint, there is nothing in the record to suggest that Defendants have a meritorious defense. *See Trs. of Int'l Union v. Rocon, Inc.*, No. 21-8534, 2022 WL 225384, at *4 (D.N.J. Jan. 26, 2022). Accordingly, this factor weighs in favor of granting default judgment.

Second, LQF has been prejudiced by Defendants' failure to answer LDF's Complaint. For a plaintiff to be prejudiced by a defendant's default, a plaintiff must show that "its ability to pursue the claim has been hindered since the entry of the default judgment." *Feliciano v. Reliant Tooling Co., Ltd.*, 691 F.2d 653, 657 (3d Cir. 1982). Any potential prejudice must "be viewed in the context of [the defendant's] failure over an extended period of time" to cure the default. *Hritz*, 732 F.2d at 1882. Defendants time to respond to the Complaint expired on February 1, 2024, for Patel and February 13, 2024, for Nisha Investments. *See* Fed. R. Civ. P. 12(a)(1)(A)(i). "Defendants' failure to participate in this case has obstructed [LQF's] ability to pursue relief, and without default judgment, [LQF] has no other means of obtaining redress for the alleged harm." *Days Inn*

9

*Worldwide, Inc. v. Mataji3 Corporation*, No. 23-2985, 2025 WL 1039483, at *5 (D.N.J. April 8, 2025). Accordingly, the prejudice factor weighs in favor of granting default judgment.

Third, Defendants' conduct is culpable. For default judgment purposes, culpability does not require intentional and malicious actions on the part of the non-movant, but merely "[r]eckless disregard for repeated communications from plaintiffs and the court." *Hritz*, 732 F.2d at 1183. "[C]ulpable conduct means actions taken willfully or in bad faith, and such bad faith may be presumed where a defendant fails to respond to a complaint and offers no reason for its failure to engage in the action." *Gayeman v. Cannon*, No. 14-1518, 2016 WL 6834109, at *2 (E.D. Pa. Nov. 21, 2016); *Slover v. Live Universee, Inc.*, No. 8-2645, 2009 WL 606133, at *2 (D.N.J. Mar. 9, 2009) ("Defendant is [ ] presumed culpable where it has failed to answer, move, or otherwise respond.") (citation omitted); *see also Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.*, 175 F. App'x 519, 523 (3d Cir. 2006) (holding that a defendant's failure to respond to communications from the plaintiff and the court can constitute culpability). Over one year has passed since the Complaint was filed in December 2023, without answer. Accordingly, the culpability factor weighs in favor of default judgment.

Based on the foregoing, default judgment is a proper remedy and should be granted.

### E. Plaintiff is Entitled to Damages

LQF seeks a total amount of $577,341.36, comprised of $541,601.10 in liquidated damages (inclusive of prejudgment interest), and $35,740.26 in recurring fees (inclusive of prejudgment interest). Having reviewed the evidence LQF provides in support of its damages claim, the Court is satisfied that LQF is entitled to the claimed damages. *See Comdyne I*, 908 F.2d at 1149 (holding that the plaintiff must prove its damages allegations).

i. **Liquidated Damages**

Reasonable liquidated damage clauses between commercial parties, in contexts similar to this case, are presumptively valid, and the burden is on the party opposing enforcement of the clause to demonstrate otherwise. *MetLife v. Washington Ave. Asscs., L.P.,* 159 N.J. 484, 496 (1999); *Central Steel Drum Co. v. Gold Cooperage, Inc.*, 200 N.J. Super. 251, 265, *certif. denied*, 101 N.J. 303 (1985), *overruled on other grounds*, *Kutzin v. Pirnie*, 124 N.J. 500 (1991). Indeed, New Jersey law favors provisions in agreements that fix specified amounts of damages in the event of a breach. *See D.H.M. Indus., Inc. v. Central Port Warehouses, Inc.*, 127 N.J. Super. 499 (App. Div. 1973), *aff'd*, 64 N.J. 548 (1974). A liquidated damages clause is valid where such a clause "constitutes a reasonable forecast of the provable injury resulting from the breach" and where harm "is incapable or very difficult of accurate estimate." *Wasserman's, Inc. v. Middletown*, 137 N.J. 238, 249-50 (1994).

The Franchise Agreement provides that, in the event of premature termination of the Franchise Agreement, Nisha Investments will pay liquidated damages and all outstanding Recurring Fees to LQF within thirty (30) days of the date of termination. (Compl. ¶ 16; Mallet Decl. at ¶ 10, Exhibit A at §§ 12.1). Specifically, Section 12.1 of the Franchise Agreement set liquidated damages for the Facility at an amount equal to the average monthly accrued Recurring Fees during the immediately preceding l2 full calendar months multiplied by 36 or the number of months remaining in the unexpired Term (the "Ending Period") at the date of termination, whichever is less)." (Mallet Decl. at ¶ 10, Exhibit A at §§ 12.1). LQF's calculation is based on the Gross Room Revenue supplied to LQF during the prior twelve months preceding Defendants termination. (Mallet Decl. at ¶ 13, Ex. E, ECF No. 9). LQF earned Recurring Fees for the twelve (12) months immediately preceding termination in the amount of $154,154.74, annually, or

$12,846.23, monthly. (Mallet Decl., Ex. E). Thus, according to Section 12.1, LQF is entitled either to (1) the amount of thirty-six times the average monthly Recurring Fees—$462,464.28, which is calculated by multiplying $12,846.23 by 36 or (2) $430,000.00. The total amount of Liquidated Damages to LQF is therefore $462,464.28.

### ii. Recurring Fees

The amount of Recurring Fees that LQF demanded at the time of termination was $29,423.42. (calculated at the legal rate of 1.5% per month pursuant to § 7.3 of the Franchise Agreement) (Mallet Decl., Ex. D, ECF No. 11-8). LQF submitted an updated itemized statement seeking Recurring Fees in the amount of $35,740.26, inclusive of interest. (Mallet Decl. ¶ 14 (citing Ex. F, ECF No. 11-10)).[6] The Court finds the unambiguous language of the Franchise Agreement indicates RWI is entitled to Recurring Fees. However, the Court finds it is unclear from the invoice submitted by RWI whether all the outstanding amounts constitute Recurring Fees. Additionally, it is unclear from the invoice and Franchise Agreement what constitutes "Finance Charges." Accordingly, the Court directs Plaintiff to submit supplemental documentation outlining the requested Recurring Fees. *See Ramada Worldwide, Inc. v. Keys Hospitality, LLC*, --- F. Supp. --- 3d, 2024 WL 5256747, at *5 (D.N.J. December 30, 2024).

### iii. Calculation of Prejudgment Interest

LQF is entitled to interest on its Liquidated Damages and Recurring Fees. State law governs the availability of prejudgment interest on state law claims. *Mid-Jersey Bank v. Fidelity-Mortgage Investors*, 518 F.2d 640, 645 (3d Cir. 1975); *see also Utica Mut. Ins. Co. v. DiDonato*, 187 N.J. Super. 30, 43 (App. Div. 1982) (allowance of prejudgment interest in a commercial case may be determined by a provision in the contract). Under New Jersey law, prejudgment interest

---

[6] "Recurring Fees on the itemized statement accrued prior to the termination date." (Pl.'s Br. at 5 n.2).

12

"has been regarded . . . as compensatory to indemnify the plaintiff for the loss of what the monies due him would [p]resumably have earned if payment had not been refused." *Rova Farms Resort, Inc. v. Investors Ins. Co. of Am.*, 65 N.J. 474, 506, 323 A.2d 495 (1974).

Section 7.3 of the Franchise Agreement provides for interest that accrues at the rate of 1.5 percent per month on all payments that became past due under the Franchise Agreement. (Mallet Decl., ¶ 9, (citing Exhibit A § 7.3)). This provision is clear and unambiguous. Further, the Court agrees with LQF that the prejudgment interest rate of 1.5 percent applies to the Recurring Fees and Liquidated Damages. (*See* Ex. A § 7.3 (establishing a 1.5% interest rate on any past due amount)); *see also Travelodge Hotels, Inc. v. Honeysuckle Enters., Inc.*, No. 02-2889, 2005 WL 3164205, at *10 (D.N.J. Nov. 10, 2005), *aff'd*, 244 F. App'x 522 (3d Cir. 2007) (finding plaintiff was "entitled to prejudgment interest at a rate of 1.5 percent per month" where the license agreement provided for monthly interest at that rate). However, the Court disagrees with LQF as to the end date of the calculation of prejudgment interest. LQF's calculation is based on the anticipated return date of its motion, November 18, 2024. Instead, the Court calculates prejudgment interest through the date of judgment. *See Days Inn Worldwide, Inc. v. Savita Hosp. Grp.*, No. 13-2863, 2014 WL 3748204, at *3-4 (D.N.J. July 28, 2014) (awarding prejudgment interest on liquidated damages from thirty days after the plaintiff terminated the franchise agreement by sending a letter declaring the plaintiff was in breach through the day judgment was entered); *Honeysuckle Enters.*, 2005 WL 3164205, at *10 (awarding prejudgment interest on liquidated damages from thirty days after the plaintiff sent acknowledgment of termination through the date of judgment).

Thus, LQF is entitled to liquidated damages interest calculated at the legal rate of interest of 1.5% per month (18% per annum) from December 7, 2023 (30 days from the date of termination) through the date of this Opinion, May 7, 2025, a period of 517 days. Accordingly,

13

LQF is entitled to $117,907.02 in interest on its liquidated damages. The $117,907.02 figure is calculated by multiplying $462,464.28 (the liquidated damages amount) by 18 percent per year. That amount is then divided by 365 days to equal $228.06 per day. When the per diem interest of $228.06 is multiplied by 517 (the number of days between December 7, 2023, and May 7, 2025), the interest owed equals $117, 907.02.

Based on the foregoing, LQF's is entitled to $580,371.03 in liquidated damages, inclusive of interest.[7]

### IV. CONCLUSION

For the foregoing reasons, LQF's Motion for Default Judgment (ECF No. 11) against Defendants is **GRANTED**. LQF is entitled to $$462,464.28 in liquidated damages and $117, 907.02 in prejudgment interest. The Court **RESERVES** its decision on Recurring Fees pending receipt and review of supplemental submissions as directed by the Court. An appropriate Order accompanies this Opinion.

DATED: May 7, 2025

HONORABLE JULIEN XAVIER NEALS
United States District Judge

---

[7] The Complaint requests attorney's fees, however, Plaintiff's Motion does not make any substantive argument seeking attorney's fees or costs and does not request them in its proposed order. Consequently, the issue is deemed abandoned and waived. *See Days Inn Worldwide*, 2025 WL 1039483, at *5.